# ANTHONY POPE LAW, P.C.

ATTORNEYS AT LAW

NEW JERSEY OFFICE
60 PARK PLACE
SUITE 1101
NEWARK, NJ 07102

NEW YORK OFFICE
275 MADISON AVE.
35TH FLOOR
NEW YORK, NY 10016

TEL: (973) 344-4406
FAX: (973) 344-3201
www.anthonypopelawfirm.com

TEL: (212) 905-4900
FAX: (973) 344-3201

**ANTHONY POPE, ESQ.***
apope@apopefirm.com

*Certified by the Supreme Court of
New Jersey as a Civil & Criminal Trial Attorney*

**PLEASE REPLY TO:**
**New Jersey Office**

April 4, 2025

**VIA ECF**
The Honorable Robert Kirsch
United States District Judge
Clarkson F. Fisher Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 07808

     **RE:**     **United States v. Daniel Dadoun**

Dear Judge Kirsch:

     This office represents the interests of Defendant, Daniel Dadoun, who is presently scheduled for a plea hearing before Your Honor on Tuesday, April 8, 2025. On April 3, 2025, the Government filed a letter brief informing the Court of the intent to move for Mr. Dadoun's detention pending sentencing, pursuant to 18 USC § 3143. Please accept this letter brief in reply and opposition to same.

     As the Government stated, the standard set forth for detention in 18 USC § 3143 is a rigorous evidentiary test and high standard requiring the Court to find by clear and convincing evidence that the Defendant is not likely to flee or pose a danger to the safety of the community. Defendant respectfully submits that the Government is unable to meet this high threshold, as he poses no flight risk or danger to the community.

## DEFENDANT DOES NOT POSE A FLIGHT RISK

     The Government argues that Dadoun is a flight risk because he is a citizen of Israel, France, and Canada, but not the United States. However, he has surrendered all foreign passports and remains on strict home confinement with a custodian and monitoring, rendering travel

1

impossible for him. Regardless, Dadoun has no intention of fleeing the Country or avoiding any court proceedings. Further, as the Government points out in its motion, "Defendant has appeared for all court appearances required in this case." (ECF 32).

The Government further alleges that Dadoun may have access to significant financial resources and foreign bank accounts—however, this does not mean that he is a risk of flight. Despite the Government making these same arguments during Dadoun's bail hearing on September 19, 2025, Judge Hammer disagreed and released him on home confinement with a $10,000,000 security appearance bond secured by real estate properties and a co-signer. (ECF 20). Since then, despite access to financial resources, he has remained in the Country and promptly appeared at all Court proceedings.

The Government cites five violations of Defendant's release conditions—none of which even come close to equating to Defendant's attempted flight. Rather, they pertain to minor monitoring violations involving travel to and from pre-approved medical appointments or religious services. Indeed, despite Judge Hammer being advised as to two monitoring violations from January 16 and 19, 2025 (cited by the Government in its motion, ECF 32, p.4), His Honor entered an Order, with the consent of the Government, modifying Dadoun's release conditions to allow him to attend synagogue on the Sabbath. (ECF 31).

As explained below, Defendant's remaining violations pertained to simple and innocuous travel issues to and from synagogue. None of these violations included an attempt of flight, danger, or violence. The violations similarly did not involve Dadoun accessing any financial or foreign resources. The Government cannot point to any evidence showing Dadoun used or attempted to use his resources for any nefarious purposes.

While Defendant's family lives in Israel, this does not mean he does not have community ties in his current community in Brooklyn, New York. Since his release, he has stayed with his custodian, Motti Zibler, his friend for over 10 years, in Brooklyn, where there is a large Orthodox Jewish community in which he takes part. For example, per Judge Hammer's Order, he attends a synagogue located at 511 Avenue R in Brooklyn and enjoys a close relationship with Rabbi Moshe Bouskila. Dadoun's Orthodox Jewish Community, his surrendering of all foreign passports, lack of any attempts of flight, and the absence of any evidence showing he attempted to use any resources to flee demonstrate the degree to which Dadoun is not a flight risk in this matter.

## DADOUN DOES NOT POSE ANY DANGER TO THE COMMUNITY

While the Government does not propose in its motion that Dadoun poses a serious danger to the community, it must still be stressed that the offense(s) to which he is pleading guilty (bank fraud and money laundering) do not involve any violence or threats of violence to any person or property. Dadoun also does not have any significant criminal history. The only criminal history alleged by the Government is a conditional discharge for obstruction.[1]

---

[1] The Government did not attach any documentation verifying any offense or conditional discharge for obstruction, but rather cites "publicly available resources."

There is no indication or allegation that Dadoun has ever engaged in violence or attempted to do so. However, there is evidence that, if re-incarcerated, he would be the victim of violence. This is because while incarcerated for ten months in the Essex County Correctional facility, Dadoun was the victim of numerous antisemitic attacks by other inmates because he refused to take off his yarmulke. He was repeatedly threatened, brutalized, beaten, and on one occasion, burned in a vicious attack by dangerous inmates at the facility (See attached "Exhibit A" for photographic evidence of the burns Mr. Dadoun sustained while at the Essex County Correctional facility).

As a result, allowing Mr. Dadoun to remain on pretrial release would result in no harm or danger to the community. However, his incarceration may result in continued harm and violence to his person. Mr. Dadoun is an extremely proud and practicing Orthodox Jewish man, and would similarly refuse to take off his yarmulke if re-incarcerated, exposing him to the possibility of more antisemitic attacks.

## THE ALLEGED VIOLATIONS

In support of the contention that Dadoun should be detained pending sentencing in this matter, the Government lists five alleged violations of the terms of his pretrial release, which are:

- On January 16, 2025, Defendant purportedly had a medical appointment, but instead went shopping for approximately two hours. Defendant denied traveling to a particular shopping center, but GPS monitoring showed that he had been at the shopping center. Defendant failed to provide proof of attendance at the appointment.

- On January 19, 2025, Defendant purportedly had a medical appointment, but instead traveled around Manhattan. Defendant failed to provide documentation verifying this medical appointment.

- On March 21, 2025, Defendant visited a synagogue that was not approved by Pretrial Services, contrary to the Court's order which permitted travel only to a verified synagogue.

- On March 22, 2025, Defendant deviated from his approved plan to attend religious services to make an unauthorized stop at a private residence. Defendant told Pretrial services he was at that location for 20 minutes, when in fact he was there for an hour.

- On March 29, 2025, after having been warned about the prior instances of noncompliance, Defendant again deviated from his approved plan to attend religious services to make an unauthorized stop at a private residence. Defendant told Pretrial Services that he was at that location for 20 minutes, when in fact he was there for 40 minutes.

3

Defendant will address each and every one of the violations with an explanation, demonstrating their innocuous nature. Importantly, all of these violations pertain to unauthorized stops for pre-approved travel, but do not include any criminal actions, attempts at flight, access to financial resources, violence, or harm.

The first violation from January 16, 2025 alleges that Dadoun shopped instead of going to a pre-approved medical appointment, and did not provide proof of attendance at the appointment. Dadoun did have a scheduled medical appointment, but on his way, he was contacted by his doctor's office and was told that the appointment needed to be cancelled (see attached Exhibit B for correspondence from the doctor's office confirming this to be the case). On his drive back to his residence, he received a call from his attorney's office to discuss the case, and pulled over so that he would not be distracted. Dadoun maintains that he did not do any shopping but rather remained on the phone with his attorney.

The second violation from January 19, 2025 alleges that rather than go to a pre-approved dental appointment, he traveled around Manhattan. However, Dadoun's dental appointment, originally scheduled for 9:30 AM that day, was rescheduled to 12:30 PM. At 10:26 AM, he notified the New York Probation Office of this in an email, and stated that because of the reschedule, he would be back at his residence closer to 4PM as he was using public transportation (see attached Exhibit C). Dadoun, did in fact attend his dental appointment and was given a receipt which reflects a date of January 19, 2025 (see attached Exhibit D).

The above violations were brought to the attention of Judge Michael Hammer at a bail modification hearing on January 23, 2025, in which Dadoun requested the permission of the Court to attend synagogue on Sabbath. After hearing Dadoun's explanations, Judge Hammer denied the Motion, but stated that if Dadoun remained compliant for a period of forty-five days, he would reconsider and be inclined to allow the modification for synagogue attendance. On March 6, 2025, Dadoun and the Government entered into a consent order, signed by Judge Hammer, allowing the modification. No action was taken against Dadoun for the January 16 and 19 violations. The rest of Dadoun's violations pertain to his synagogue attendance.

The Synagogue in which Dadoun was permitted to attend on Sabbath is located at 511 Avenue R in Brooklyn, New York, which is a half-hour walk from his residence at 2702 Avenue N in Brooklyn New York. Because he observes the Sabbath, Dadoun cannot use electronics such as a car or a cell phone on Friday nights and Saturdays until sundown. Therefore, he walks the half hour to and from synagogue for prayers on the Sabbath. Originally, he wanted to pray at a synagogue closer to his residence, but the Rabbis at those synagogues were reluctant to provide a letter to the Court to authenticate his attendance. However, Rabbi Moshe Bouskila did provide a letter of authentication, and therefore the synagogue at 511 Avenue R is the only one that Dadoun has approval to attend.

As to the March 21, 2025 violation, Dadoun does admit that he traveled to a closer synogogue on that night because the rainy and windy weather conditions made it difficult to walk the half-hour (See Exhibit E for weather report from March 21, 2025). He regrets this decision and knows he should have remained at home rather than attend a non-approved synogoue.

4

However, this relatively minor infraction did not include any attempts at flight, criminal behavior, violence or harm.

The next violation cited by the Government is from March 22, 2025, where Dadoun is alleged to have made an unauthorized stop at a private residence on his walk home from his approved synagogue. Dadoun maintains that on his walk home, he passed by an old friend he had not seen in a decade and struck up a conversation with him on the street. He did not enter any residences. This infraction did not involve anything other than Dadoun having a conversation with a friend on a street near his residence on the Sabbath.

The final violation cited by the Government is from March 29, 2025, where Dadoun is alleged to again have made an unauthorized stop at a private residence on his walk home from his approved synagogue. On that occasion, Dadoun stopped at the home of his Rabbi in order to use the restroom, as the restroom at his synagogue was unusable and he was not able to walk thirty minutes back to his residence without first relieving himself, as he suffers from urinary urgency and a sensitive stomach. His Rabbi, Moshe Bouskila, allowed Dadoun into his residence to allow him to use his restroom before he began walking home. Rabbi Bouskila authored a letter to the Court confirming these circumstances (See attached Exhibit F). Because Dadoun cannot use his phone on the Sabbath, he was unable to first obtain permission from Probation in order to make this stop. Dadoun is committed to nothing but full compliance in the future, and will not engage in any behavior violative of his current release conditions.

The above five innocuous violations constitute the entirety of his record of non-compliance. None of them demonstrate that he is a flight risk or a danger to his community. None of them involve access to finances, bank accounts, passports, or anything to do with the offense(s) to which he is pleading guilty. Rather, they all involve travel issues to and from pre-approved locations such as medical appointments and synagogue. As such, the Government is unable to meet the high standard set forth in 18 USC § 3143 for detention.

Without the above five violations, the Government relies on Dadoun's status as a non-citizen and access to finances as the only evidence to suggest he is a flight risk. The Government made these same arguments to suggest that Dadoun was a flight risk at his original bail hearing, but Judge Hammer disagreed and ordered his release. The nature of the additional five violations incurred since that time do not equate to Dadoun being a flight risk, as none of them involved Dadoun's attempt to flee. He has appeared in Court for every hearing, and will continue to do until he is ultimately sentenced.

## CONCLUSION

For the foregoing reasons, Daniel Dadoun respectfully submits that following the entry of his guilty plea, he be permitted to remain on home confinement.

Respectfully submitted,
**ANTHONY POPE LAW, P.C.**

ANTHONY POPE, ESQ.

cc: AUSA Katherine Romano (Via ECF and email)
    Daniel Hernandez, Senior U.S. Pretrial Services Officer (via email)